**IN THE UNITED STATES DISTRICT COURT FOR THE**

**WESTERN DISTRICT OF WISCONSIN**

| | |
|---|---|
| THE STATE OF WISCONSIN, <br><br> *Plaintiff*, <br><br> v. <br><br> FORIS DAX MARKETS, INC., <br><br> NORTH AMERICAN DERIVATIVES EXCHANGE INC., d/b/a CRYPTO.COM DERIVATIVES NORTH AMERICA, <br><br> and <br><br> DOES 1-20, <br><br> *Defendants*. | Case No. 2026CV001286 |

**NOTICE OF REMOVAL**

Pursuant to 28 U.S.C. §§ 1331, 1441(a), 1442(a), and 1446, Defendants Foris Dax Markets, Inc. ("Foris Dax") and North American Derivatives Exchange, Inc. d/b/a Crypto.com | Derivatives North America ("CDNA"), by and through undersigned counsel, remove the above-captioned action (the "Action") from the State of Wisconsin Circuit Court, Dane County, to the United States District Court for the Western District of Wisconsin.

In support of removal, Defendants state as follows:

### I.     BACKGROUND.

**A. Defendants.**

1.      Foris DAX is a Delaware corporation with its principal place of business in Tyler, Texas.  It is the parent company of CDNA.

2.      CDNA is a Designated Contract Market ("DCM") authorized and regulated by the Commodity Futures Trading Commission ("CFTC").  In its role as a DCM, CDNA maintains and regulates a market that lists derivatives products for trading as part of a national derivatives market

under the regulatory oversight of the CFTC pursuant to the Commodity Exchange Act ("CEA"). CDNA has, in accordance with all applicable procedures for listing such products and subject to CFTC oversight, listed for trading event contracts that reference events associated with live sports events ("Sports Events Contracts") and, as authorized by federal law, exercises regulatory oversight with respect to the trading of those contracts.

**B. Summary of the Complaint.**

3.      On April 23, 2026, Plaintiff State of Wisconsin filed a Complaint against Defendants Foris Dax and CDNA in the State of Wisconsin Circuit Court, Dane County.  A copy of that Complaint is attached hereto as **Exhibit 1**.

4.      Wisconsin claims that Defendants' hosting and trading of Sports Events Contracts—products which are and remain federally regulated event contracts subject to the exclusive jurisdiction of the CFTC—constitutes Abatable Public Nuisance under Wisconsin state law.  Wis. Stat. § 945.03(1m); *see* Compl. ¶¶ 57–61.

5.      Wisconsin alleges that Defendants' listing of Sports Events Contracts constitutes the offer and sale of "bets," as defined under Wis. Stat. § 945.01(1).  Compl. ¶ 60.  It alleges further that Defendants facilitate illegal gambling by assisting in the "transmission [and] receipt" of information used in illegal betting "for gain," contrary to Wis. Stat. §§ 945.03(1m)(g), (b).  Compl. ¶ 63.  In effect, Wisconsin alleges that by listing Sports Events Contracts for trade on its DCM, Defendants violate Wisconsin State gambling statutes.  Wis. Stat. § 945.01(1) *et seq*.; *see* Compl. ¶¶ 65–67.

6.      Plaintiff seeks (i) a declaratory judgment holding that Defendants' offering of Sports Event Contracts violates Wisconsin state law; and (ii) preliminary and permanent injunctive relief enjoining and restraining Defendants from offering or continuing to offer Sports Events Contracts to customers located in Wisconsin.  Compl. at 22.

7.      Defendants have not yet been served with the Complaint.  Accordingly, Defendants' time to respond to the Complaint by answer or motion has not expired, and Defendants have not served or filed an answer or motion.

8.      The filing of the Notice of Filing of Notice of Removal attached as Exhibit 2 concurringly with this Notice will be Defendants' first appearance in Circuit Court in this matter.

**C. The CFTC, CDNA And Other DCMs Are Litigating Identical Federal Questions In Federal District and Appellate Courts Nationwide.**

9.      This Action is one of a number of efforts by state regulators around the country to improperly assert jurisdiction over and purport to regulate activities on federally-regulated markets, contrary to Congress's vesting of "exclusive jurisdiction" over those markets in the CFTC.

10.      Since March 2025, the CFTC, CDNA and other federally regulated markets and market participants have been litigating the very same federal law question that is central to this case in courts around the country.  *See, e.g.*, *CDNA v. Hendrick*, No. 2:25-cv-00978 (D. Nev.); *KalshiEx v. Orgel*, No. 3:26-cv-00034 (M.D. Tenn.); *KalshiEx v. Flaherty*, No. 1:25-cv-02152 (D.N.J.); *United States v. Illinois*, No. 1:26-cv-03659 (N.D. Ill.).

11.      The Third Circuit—the first appellate court to reach the issue—recently affirmed the CFTC's exclusive jurisdiction, holding that "[t]he [Commodities Exchange Act] preempts state laws that directly interfere with swaps traded on DCMs.  Kalshi's sports-related event contracts are swaps traded on a CFTC-licensed DCM, so the CFTC has exclusive jurisdiction." *KalshiEX, LLC v. Flaherty*, 2026 WL 924004, *2 (3d Cir. Apr. 6, 2026).  Cases raising the same question are currently on appeal in the Ninth, Fourth, and Sixth Circuits.  *See, e.g.*, *N. Am. Derivatives Exch., Inc. v. Nevada*, No. 25-7187 (9th Cir.); *KalshiEx LLC v. Martin*, No. 25-1892 (4th Cir.); *KalshiEX v. Schuler*, No. 26-3196 (6th Cir.).

12.      The CFTC, together with the U.S. Department of Justice, has itself initiated lawsuits against three states asserting state encroachment on its exclusive jurisdiction over event contracts traded on DCMs.  *See United States v. Arizona*, No. 2:26-cv-02246 (D. Ariz.); *United States v. Connecticut*, No. 3:26-cv-00498 (D. Conn.); *United States v. Illinois*, No. 1:26-cv-03659 (N.D. Ill.); *see also* CFTC Amicus Br., *N. Am. Derivatives Exch., Inc. v. Nevada*, No. 25-7187 (9th Cir. Feb. 17, 2026), Dkt. No. 38.2.

13.     Wisconsin filed this Action against CDNA the same day it filed similar lawsuits against DCMs Kalshi and Polymarket and Futures Commission Merchants ("FCMs") Robinhood and Coinbase.  *Wisconsin v. Kalshi, Inc.*, No. 2026CV001284 (filed Apr. 23, 2026); *Wisconsin v. Blockratize, Inc. d/b/a Polymarket*, No. 2026CV001285 (filed Apr. 23, 2026).  Wisconsin did not engage in any dialogue with or offer any warning to CDNA prior to filing the Action.

## II.    REMOVAL IS PROPER BECAUSE THE COURT HAS FEDERAL QUESTION JURISDICTION.

14.     Under 28 U.S.C. § 1441, defendants may remove any civil action filed in state court over which a federal court has original jurisdiction to the federal district court for the district in which the state court action is pending.

15.     Removal is proper under Section 1441 for two reasons:  *First*, Wisconsin's claims necessarily raise disputed and substantial questions of federal law.  *Second*, those claims are subject to complete preemption.

### A.  Wisconsin's Claims Necessarily Raise Disputed and Substantial Questions of Federal Law.

16.     Federal question jurisdiction exists because the face of Wisconsin's complaint necessarily raises—as the central question to be litigated—whether "[r]epackaging" of the instruments at issue as "event contracts" eligible for trading on a federal market "remove them" from State regulation.  Compl. ¶ 60.  Wisconsin calls CDNA's registration and listing of these contracts on a federal market a "fig leaf" meant to avoid state regulation.  Compl. ¶ 4.  While Wisconsin's Complaint does not expressly use the words "federal preemption," there can be no other fair reading of its allegations other than that the Complaint is intended to raise that precise issue for judicial resolution.

17.     Federal question jurisdiction exists over a state law claim when federal law questions are "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013) (citing *Grable & Sons Metal Prods., Inc. v. Darue Eng'g*

*& Mfg.*, 545 U.S. 308, 313–14 (2005)).  In such a case, "jurisdiction is proper because there is a 'serious federal interest in claiming the advantages thought to be inherent in a federal forum,' which can be vindicated without disrupting Congress's intended division of labor between state and federal courts."  *Id.* (quoting *Grable*, 545 U.S. at 313).  The Complaint satisfies each requirement.

18.     ***Federal law is necessarily raised.***  Wisconsin cannot establish its claims without resolution of disputed questions of federal law, specifically the proper construction of the CEA and the Supremacy Clause of the United States Constitution.

19.     Federal preemption under the CEA precludes Wisconsin's attempt to regulate trading on CDNA, a CFTC-registered DCM.  The CEA provides that the CFTC has "exclusive jurisdiction" over such trading, 7 U.S.C. § 2(a)(1)(A), and the text, purpose, history, and comprehensive regulatory framework of the CEA demonstrate Congress' intent to preempt state law as applied to trading on DCMs.  *See, e.g.*, *Am. Agric. Movement, Inc. v. Bd. of Trade*, 977 F.2d 1147, 1156 (7th Cir. 1992) (concluding "a contract market could not operate efficiently, and perhaps not at all, if varying and potentially contradictory legal standards governed its duties to investors").

20.     Wisconsin's claims necessarily implicate this issue of federal law.  The Complaint's explicit legal theory is that Defendants' activity is "illegal," Compl. ¶ 2; that Defendants "use[] a fig leaf" of federal derivatives law to "relabel [their] sports bets as 'event contracts'" subject to CFTC regulation, *id.* ¶ 4; and that "[r]epackaging ordinary sports bets as 'event contracts' does not remove them from the statutory definition of a 'bet' under Wis. Stat. § 945.01(1)," *id.* ¶ 60.

21.     By Wisconsin's own allegations, to establish its claims, it must demonstrate that federal law does not "remove" the event contracts at issue "from the statutory definitions" of state gambling laws.  *See Georgia Gambling Recovery LLC v. Kalshi Inc.*, 2026 WL 279375, at 3–4 (M.D. Ga. Feb. 3, 2026) (permitting removal of complaint alleging that event contracts constitute gambling when the claim "depends on whether the contract is unlawful under the law governing its validity").

22.     Additionally, the substantive Wisconsin law underlying the Complaint necessarily turns on federal law.  For instance, the Complaint alleges that "[e]ach sports-related event contract traded by Wisconsin residents using Crypto.com's services represents a 'bet,' as defined by Wis. Stat. § 945.01(1)."  Compl. ¶ 58; *see also id.* ¶¶ 59–67 (depending on the conclusion that event contracts are "bets").   But that same statute defines "bet" to exclude "bona fide business transactions . . . including without limitation: [] contracts for the purchase or sale at a future date of securities or other commodities."  Wisc. Stat. § 945.01(1).  In other words, determining whether event contracts are "bets" requires an immediate analysis of whether event contracts are "bona fide business transactions," and whether they are transactions in commodities under federal law.  *See* 7 U.S.C. § 1a(19) (defining "excluded commodity" to include "an occurrence"—meaning a contract on whether an event will occur is a contract involving a commodity).  This also means that Wisconsin's claims necessarily turn on federal law.  *See Georgia Gambling Recovery LLC*, 2026 WL 279375, at 3–4.

23.     Finally, state law claims prohibiting gambling must be read in light of federal law's clear implications.  *See Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 325 (2015) (federal law must prevail "when state and federal law clash").  Here, as the Third Circuit has recognized, the CEA plainly preempts any state efforts to regulate the event contracts that Defendants offer.  *See Flaherty*, 2026 WL 924004, at *2.  Any construction of the state laws cited by Wisconsin must be read in light of this command, meaning issues of federal law are necessarily present.  *See Citadel Secs. LLC v. Chi. Bd. Options Exch., Inc.*, 2017 WL 118419, at *3 (N.D. Ill. Jan. 12, 2017) (holding that a court may uphold removal when "a plaintiff has 'artfully pleaded' to omit necessary federal questions") (citation omitted).

24.     ***Federal law is disputed.***  The federal law questions here are actually disputed.  Indeed, a disputed point of federal law is "the central point of dispute" here.  *Gunn*, 568 U.S. at 259.  As discussed, Wisconsin's position on federal law is that the CEA "does not remove" event contracts traded on CDNA from Wisconsin's regulatory authority.  Compl. ¶ 60.  Defendants submit that the CEA does remove CDNA's event contracts from Wisconsin's regulatory authority.

25.     ***The federal question is substantial.***  The federal law question at issue is substantial. "The relevant sense of substantiality is . . . 'the importance of the issue to the federal system as a whole.'"  *Sarauer v. Int'l Ass'n of Machinists & Aerospace Workers, Dist. No. 10*, 966 F.3d 661, 674 (7th Cir. 2020) (quoting *Gunn*, 568 U.S. at 260).  The resolution of the CEA's preemptive scope is incredibly important to derivatives law, preemption law, and federalism writ large.

26.     The federal question at issue is subject to near-unparalleled dispute across the country.  There are dozens of cases pending, including several in circuit courts.  *See, e.g.*, *Flaherty*, 2026 WL 924004; *N. Am. Derivatives Exch., Inc. v. Nevada*, No. 25-7187 (9th Cir.); *KalshiEx v. Martin*, No. 25-1892 (4th Cir.); *KalshiEX v. Schuler*, No. 26-3196 (6th Cir.); *Kalshiex LLC v. Orgel*, 2026 WL 474869 (M.D. Tenn. Feb. 19, 2026).  The number of federal cases addressing this issue is alone evidence of its importance.  Moreover, the CFTC's recent lawsuits challenging state regulators' attempts to regulate event contract trading on federally-regulated markets demonstrate that this dispute is critical to the federal regulatory regime.  *See*, *e.g.*, *United States v. Illinois*, No. 1:26-cv-03659 (N.D. Ill.); *United States v. Connecticut*, No. 3:26-cv-00498 (D. Conn.).

27.     ***The federal question is capable of resolution without disrupting the federal-state balance.***  Federal courts are capable of resolving this issue without disputing the federal-state balance.  Federal courts are best situated to resolve whether a federal statute and the federal Supremacy Clause call for exclusive federal regulation of a federal derivatives market.  Resolving these uniquely federal issues in federal court ensures the harmonious application of federal and state law and "portend[s] only a microscopic effect on the federal-state division of labor."  *Grable*, 545 U.S. at 315.

28.     Meanwhile, allowing a state court to adjudicate the legality of federally regulated event contracts would fracture national derivatives markets and undermine the uniformity Congress deemed essential by granting the CFTC exclusive jurisdiction over these markets.  As the Seventh Circuit has recognized, the CEA reflects Congressional concern that the states "might step in to regulate futures markets themselves," thus "subject[ing] the national futures trading apparatus to conflicting regulatory demands."  *Am. Agric. Movement, Inc.*, 977 F.2d at 1156 (citing

*Commodity Futures Trading Commission Act: Hearings Before the Senate Committee on Agriculture & Forestry*, 93d Cong., 2d Sess. 685 (1974) (statement of Sen. Clark)).  Congress enacted the CEA to establish "a comprehensive regulatory structure to oversee the volatile and esoteric futures trading complex." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran*, 456 U.S. 353, 355–56, 386 (1982) (quoting H.R. Rep. No. 93–975, p. 1 (1974)).

29.    For all of these reasons, removal is particularly appropriate in this case.

**B. Wisconsin's Claims Are Subject To Complete Preemption.**

30.    Removal is separately warranted under the doctrine of complete preemption. Complete preemption provides for federal jurisdiction "when federal law completely occupies a field" because "any claim within that scope rests on federal law, no matter how a plaintiff tries to frame the complaint." *Miller v. Southwest Airlines Co.*, 926 F.3d 898, 904–05 (7th Cir. 2019).

31.    The CEA completely preempts state law causes of action that would regulate trading activity on DCMs.  The CEA vests with the CFTC "exclusive jurisdiction" to regulate trading on DCMs like CDNA.  7 U.S.C. § 2(a).  That provision includes a "savings clause" that preserves the jurisdiction of the states *except* as to the subject matter of the CFTC's exclusive jurisdiction, including trading on DCMs.  *Id.* (preserving state jurisdiction "[e]xcept as hereinabove provided").  Where the CEA limits the CFTC's exclusive jurisdiction, it explicitly declines to limit that exclusive jurisdiction as to registered entities such as DCMs.  7 U.S.C. § 16(e)(1)(B)(i) (providing the CEA "shall [not] supersede or preempt . . . the application of any Federal or State statute . . . to any transaction . . . that is not conducted on or subject to the rules of a registered entity"); 7 U.S.C. § 13a-2(1) (allowing state attorneys general to bring suits for violations of the CEA against "any person" *other than* a DCM) (emphasis added); *see also Flaherty*, 2026 WL 924004, at *4 (noting "limiting principle" in § 16(e)(1)(B)(i) "does not apply" to DCMs). The CEA leaves no room for state regulation of trading on DCMs.

32.    In occupying the field of DCM regulation, Congress has determined that claims like Wisconsin's are federal claims that fall within this Court's federal question jurisdiction. *Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 8 (2003) ("When the federal statute completely pre-

empts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law.").

### III.     FEDERAL OFFICER REMOVAL IS PROPER.

### A.  Removal Is Proper Because CDNA Acted Under Authority Delegated By The CFTC.

33.     CDNA has the right to have its federal preemption defense heard in a federal court pursuant to 28 U.S.C. § 1442.  CDNA is a self-regulatory organization that operates under the supervision and authorization of the CFTC to perform regulatory functions the CFTC would otherwise be required to perform itself.  Wisconsin's suit directly targets actions CDNA in its capacity as a self-regulatory organization exercising delegated federal authority.  The suit is therefore removable.

34.     The federal officer statute authorizes removal of an action against "any officer (or any person acting under that officer) of the United States or of any agency thereof . . . for or relating to any act under color of such office."  28 U.S.C. § 1442(a)(1).  The statute is intended "[t]o protect the Federal Government from state-court 'interference with its operations.'"  *Chevron USA Inc. v. Plaquemines Parish*, 608 U.S. ___, 2026 WL 1040461, at \*3 (2026) (quoting *Watson v. Philip Morris Cos.*, 551 U.S. 142, 150 (2007).  Because it "is an exception to the well-pleaded complaint rule," federal officer removal permits "suits against federal officers to be removed despite the nonfederal cast of the complaint."  *Kircher v. Putnam Funds Tr.*, 547 U.S. 633, 644 n.12 (2006).  The Supreme Court has determined "the statute must be 'liberally construed'" and that "[t]he words 'acting under' are broad."  *Watson*, 551 U.S. at 147.  In the "jurisdictional inquiry" associated with removal, courts credit the defendant's "theory of the case."  *Jefferson Cnty. v. Acker*, 527 U.S. 423, 432 (1999).

35.     Federal officer removal has three requirements:  (1) "the removing defendant must be the United States, a federal agency, a federal officer, or a person 'acting under' a federal officer," (2) "the suit must be for or relating to any act under color of such office," and (3) "the removing defendant must assert a colorable federal defense."  *Chevron*, 2026 WL 1040461, at \*3 (citation omitted).  CDNA meets all three.

36.     CDNA is a "person" under settled law that "[c]orporations are persons under § 1442(a)." *Betzner v. Boeing Co.*, 910 F.3d 1010, 1015 (7th Cir. 2018); *see also* 1 U.S.C. § 1 (defining "person" to include "corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals").

37.     Wisconsin's suit is specifically for or relating to actions that CDNA took under the supervision, and by the delegated authority, of the CFTC, including with respect to contract listing, safeguards, dispute resolution, and ensuring market integrity and market participant access.

38.     As reflected in the CEA, Congress elected to regulate the national commodities exchange "through a system of effective self-regulation of trading facilities, clearing systems, market participants and market professionals under the oversight of the [CFTC]." 7 U.S.C. § 5. As a DCM, CDNA is a self-regulatory organization ("SRO"), 17 C.F.R. § 1.3, that acts as a regulator of its market—similar to the role a national securities exchange like NYSE or Nasdaq plays in the securities markets. As federal courts have repeatedly recognized, the key feature of this self-regulatory framework is that the SRO "must be subordinate to a federal actor," otherwise the framework would raise questions under the private non-delegation doctrine. *See, e.g.*, *Oklahoma v. United States*, 163 F.4th 294, 307 (6th Cir. 2025) (holding that "[i]n case after case, the federal courts have upheld this arrangement, reasoning that the SEC's control over the rules and their enforcement makes the SROs permissible aids and advisors" but that "a private entity may aid a public agency so long as the agency retains ultimate authority over the implementation of the federal law").

39.     In listing and regulating contracts traded on a DCM, CDNA does not act independently of the CFTC. Rather, pursuant to the statutory scheme that Congress designated, CDNA operates under the supervision, direction, and designated authority of the CFTC. As such, CDNA must advance all requirements of the CEA, the CEA's 23 core principles and all CFTC rules governing contract listing and design, as well as access, surveillance, enforcement, dispute resolution, and customer protection. *See* 7 U.S.C. §§ 7(d), 8(a); 17 C.F.R. §§ 38.3(a), 38.151. The CFTC has "sweeping authority" to enforce the CEA. *CFTC v. Schor*, 478 U.S. 833, 842 (1986).

10

Congress has expressly authorized the CFTC to "review and approv[e] . . . event contracts" and thereby permit those contracts to be "listed" for "trading" on federally registered exchanges. 7 U.S.C. § 7a-2(c)(5)(C)(i)-(ii). The CFTC is further authorized to suspend or revoke the designation of a contract market, *id.* §§ 7b, 8(b), bring administrative enforcement actions, *id.* §§ 9, 13b, and sue in federal court for, among other things, injunctive relief, the rescission of contracts, and the imposition of trading and registration bans, *id.* § 13a-1.

40.     As an SRO, CDNA performs a panoply of regulatory functions. CDNA must "establish, monitor, and enforce compliance with the rules of the contract market," including "access requirements," "the terms and conditions of any contracts to be traded on the contract market," and "rules prohibiting abusive trade practices on the contract market." 7 U.S.C. § 7(d)(2). Prior to implementing or revising a rule, CDNA must submit the rule to the CFTC for approval or certify that the contract complies with federal law and the CFTC's requirements. 7 U.S.C. § 7a-2(c)(1). The CFTC may permit the rule's certification or stay certification pending further review. *Id*. § 7a-2(c)(2)–(3).

41.     CDNA must follow a similar process for listing a new event contract by either submitting the contract to the CFTC for approval or certifying compliance with federal rules and the CFTC's regulations. *See, e.g.*, 7 U.S.C. §§ 7a-2(c)(1), (4)(A), (5)(C); 17 C.F.R. §§ 40.2(a), 40.3(a), 40.11(c). The CFTC may investigate, stay, or amend any listed contract. 17 C.F.R. § 40.2(c). If the CFTC determines that an event contract is contrary to the public interest because it involves certain activities including "gaming," the CFTC may, in its discretion, prohibit its listing. 7 U.S.C. § 7a-2(c)(5)(C).

42.     CDNA performs these and many other regulatory functions under the delegated authority of the federal government.

43.     Because CDNA's actions that Wisconsin seeks to enjoin "involve an effort to assist, or to help carry out, the duties or tasks of the federal superior," it "acts under" the authority of the CFTC. *Watson*, 551 U.S. at 152 (emphasis omitted).

44.     Unlike a private company merely ensuring its own compliance with federal law, CDNA exercises delegated governmental authority to regulate the conduct of third-party market participants.  CDNA establishes, monitors, and enforces rules governing how third parties access and trade on its market, including rules prohibiting abusive trade practices—functions that would otherwise need to be performed by the CFTC itself.  *See* 7 U.S.C. § 7(d)(2), (4), (12), (14).  This regulatory role over third parties is what distinguishes CDNA's functions from the "simple compliance with the law" that is insufficient for federal officer removal.  *See Watson*, 551 U.S. at 153.

45.     CDNA's role as an SRO also goes well beyond mere self-certification of its contracts.  While a Nevada district court found that a DCM's self-certification of contract compliance did not satisfy the "acting under" requirement, *see Nevada ex rel. Nevada Gaming Control Bd. v. Blockratize, Inc.*, 2026 WL 579376, at *1 (D. Nev. Mar. 2, 2026), that court did not adequately account for the breadth of an SRO's delegated authority.  CDNA does not merely certify compliance; it designs and enforces rules governing market access, trading conduct, dispute resolution, and market integrity for all market participants, exercising considerable discretion in how it discharges those responsibilities.  *See* 7 U.S.C. §§ 7(d)(2), (4), (12), (14).  This delegation of rulemaking and enforcement authority is precisely the kind of "effort to assist, or to help carry out, the duties or tasks of the federal superior" that satisfies the acting-under requirement.  *See Watson*, 551 U.S. at 152.

46.     The conduct Wisconsin seeks to enjoin is actions that CDNA takes pursuant to the CFTC's authority.  Wisconsin seeks to enjoin CDNA's listing of event contracts alleging they violate state law.  *See* Compl. ¶¶ 57–61.  But CDNA offers its event contracts as a federally designated contract market under the comprehensive oversight of the CFTC.

47.     Wisconsin alleges that Wisconsin market participants have improperly traded event contracts on CDNA's platform.  *See id.* ¶ 58.  But under federal law CDNA is directed to "establish, monitor, and enforce compliance" with "access requirements," 7 U.S.C. § 7(d)(2), and provide "impartial access to its markets and services," 17 C.F.R. § 38.151 (b).

48.     As detailed above, Wisconsin's actions are preempted under federal law.  Federal preemption is a "colorable defense" for purposes of federal officer removal.  *See Paldrmic v. Altria Corp. Servs., Inc.*, 327 F. Supp. 2d 959, 963 (E.D. Wis. 2004) ("Preemption is a colorable federal law defense.").

49.     The Supreme Court has emphasized that "[o]ne of the primary purposes of the removal statute . . . was to have [federal officers'] defenses litigated in federal courts." *Willingham v. Morgan*, 395 U.S. 402, 407 (1969).  It has further noted that "[s]tate-court proceedings may reflect 'local prejudice' against unpopular federal laws and federal officials." *Watson*, 551 U.S. at 150.

50.     Because the conduct Wisconsin seeks to enjoin is self-regulation performed by CDNA subject to its designation as a DCM and under the authorization of the CFTC, this Court has jurisdiction under § 1442(a)(1) to adjudicate its federal preemption defense.

**B.  Removal Under § 1442(a)(1) Is Proper Because The CFTC Is A Necessary Party.**

51.     Removal is also proper under § 1442(a)(1) even if CDNA were not acting under the CFTC's authority because Wisconsin has artfully pleaded its Complaint to avoid naming the CFTC as a necessary party—a transparent attempt to defeat federal jurisdiction.  Under established Seventh Circuit precedent, "a plaintiff may not defeat removal by omitting to plead necessary federal questions" and "[i]f a court concludes that a plaintiff has 'artfully pleaded' claims in this fashion, it may uphold removal even though no federal question appears on the face of the plaintiff's complaint." *Citadel Secs. LLC v. Chi. Bd. Options Exch., Inc.*, 808 F.3d 694, 701 (7th Cir. 2015) (citation omitted).  Therefore, "[t]he artful pleading doctrine allows removal where federal law completely preempts a plaintiff's state-law claim." *Id.* (citation omitted) (finding that "[t]he district court properly found that removal was appropriate").

52.     Wisconsin seeks injunctive relief under Wis. Stat. §§ 823.01 and 823.02, but Wisconsin's joinder statute is clear that such relief requires joining any party whose absence would prevent complete relief or expose existing parties to inconsistent obligations.  Under Wis. Stat. § 803.03(1), a person must be joined as a party if "in the person's absence complete relief cannot be

13

accorded among those already parties" or the person "claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may . . . as a practical matter impair or impede the person's ability to protect that interest" or "leave any of the persons already parties subject to a substantial risk of incurring double, multiple or otherwise inconsistent obligations by reason of his or her claimed interest." Wis. Stat. § 803.03(1)(a)–(b) (simplified).

53. Wisconsin is undoubtedly aware that the CFTC had claimed a "substantial interest" in the "scope of its exclusive jurisdiction," including the "CEA's preemption of state laws attempting to regulate trading on CFTC-registered contract markets" like CDNA. *See* Unopposed Mot. of CFTC to File Amicus Br., *N. Am. Derivatives Exch., Inc. v. Nevada*, No. 25-7187 (9th Cir. Feb. 5, 2026), Dkt. No. 30.1, at 1–2. Indeed, the CFTC has gone even further—it has affirmatively sued state regulators to vindicate its exclusive federal authority over event contracts traded on DCMs. *See, e.g.*, *United States v. Connecticut*, No. 3:26-cv-00498, (D. Conn. Apr. 2, 2026), Dkt. No. 1 at 2 ("Connecticut's attempt to shut down federally regulated DCMs and an FCM intrudes on the exclusive federal scheme Congress designed to oversee national swaps markets."). Nevertheless, Wisconsin did not name the CFTC in this action. The reason for Wisconsin's noncompliance with Wis. Stat. § 803.03 is plain: joining the CFTC as a necessary party would provide yet another basis for removal pursuant to federal officer removal. *See* 28 U.S.C. § 1442(a)(1). But Wisconsin "may not dodge federal court . . . by 'artful pleading.'" *Doe v. Allied-Signal, Inc.*, 985 F.2d 908, 911 (7th Cir. 1993) (quoting *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 n. 2, (1981)); *see also Franchise Tax Bd. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 22 (1983) ("[I]t is an independent corollary of the well-pleaded complaint rule that a plaintiff may not defeat removal by omitting to plead necessary federal questions in a complaint."). This Court should therefore exercise jurisdiction over this case, including under the federal officer removal statute, notwithstanding Wisconsin's deliberate omission of the CFTC from the Complaint.

14

### IV.    DEFENDANTS MEET THE OTHER PROCEDURAL REQUIREMENTS FOR REMOVAL.

54.    Wisconsin filed the Complaint on April 23, 2026 and Defendants learned of the filing on the same day.  Removal is timely because Defendants have not yet been served with the Complaint.  28 U.S.C. §§ 1446(b)(1) and (c)(1); *see Murphy Bros. v. Michetti Pipe stringing, Inc.*, 526 U.S. 344, 354 (1999).

55.    Venue is proper pursuant to 28 U.S.C. §§ 102, 1441(a), and 1446(b) because the United States District Court for the Western District of Wisconsin is the federal judicial district embracing the State of Wisconsin Circuit Court, Dane County, where the Complaint was filed.

56.    In accordance with 28 U.S.C. § 1446(d), written notice of this Notice of Removal will be promptly provided to Wisconsin and filed with the State of Wisconsin Circuit Court, Dane County.  A copy of the Notice of Filing of Notice of Removal is attached hereto as Exhibit 2.

57.    No previous application has been made for the relief requested in this Notice of Removal.

58.    Defendants Foris Dax and CDNA are the only defendants presently identified in the Complaint.  This Notice of Removal is submitted by both Defendants Foris Dax and CDNA.  Accordingly, to the extent applicable, 28 U.S.C. § 1446(b)(2)(a) are met.

WHEREFORE, Defendants Foris Dax and CDNA file this Notice of Removal and respectfully requests that this matter be removed to this Court from the State of Wisconsin Circuit Court, Dane County, and that this Court assume full jurisdiction over this action for all further proceedings.

15

Dated: April 24, 2026.                     Respectfully submitted,


                                           */s/ Harper F. Beck*
                                           Eric G. Pearson (Wis. Bar No. 1064367)
                                           Harper F. Beck (Wis. Bar No. 1115774)
                                           FOLEY & LARDNER LLP
                                           777 E. Wisconsin Avenue
                                           Milwaukee, WI  53202-5306
                                           Telephone:  414-319-7360
                                           Facsimile:  414-297-4900
                                           epearson@foley.com
                                           harper.beck@foley.com


                                           Nowell D. Bamberger (*pro hac vice forthcoming*)
                                           Matthew C. Solomon (*pro hac vice forthcoming*)
                                           CLEARY GOTTLIEB STEEN & HAMILTON LLP
                                           2112 Pennsylvania Ave. NW
                                           Washington, DC 20037
                                           202-974-1500
                                           nbamberger@cgsh.com
                                           msolomon@cgsh.com


                                           *Attorneys for North American Derivatives Exchange, Inc.,*
                                           *d/b/a Crypto.com | Derivatives North America*

16

## CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of April 2026, a copy of this document, and all exhibits thereto, was served via U.S. mail and electronic mail on the following:

Assistant Attorney General Colin T. Roth
Assistant Attorney General Charlotte Gibson
Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
colin.roth@wisdoj.gov
charlie.gibson@wisdoj.gov

Dated: April 24, 2026.

*/s/ Harper F. Beck*

17