# EXHIBIT 1

**FILED**
**04-23-2026**
**CIRCUIT COURT**
**DANE COUNTY, WI**
**2026CV001286**
**Honorable Ryan D.**
**Nilsestuen**
**Branch 10**

STATE OF WISCONSIN   CIRCUIT COURT   DANE COUNTY
BRANCH ____

STATE OF WISCONSIN,

      Plaintiff,

   v.

      Case No. _____
      Unclassified - Civil:  30703

FORIS DAX MARKETS, INC.,
251 Little Falls Drive
Wilmington, DE  19808

NORTH AMERICAN DERIVATIVES EXCHANGE, INC.
D/B/A CRYPTO.COM | DERIVATIVES NORTH AMERICA,
251 Little Falls Drive
Wilmington, DE  19808

and

DOES 1-20,

      Defendants.

---

## SUMMONS

---

THE STATE OF WISCONSIN

To each entity and individual named above as a defendant:

You are hereby notified that the plaintiff named above has filed a lawsuit or other legal action against you. The complaint, which is attached, states the nature and basis of the legal action.

Within twenty (20) days of receiving this summons, you must respond with a written answer, as that term is used in Wis. Stat. ch. 802, to the

complaint. The court may reject or disregard an answer that does not follow the requirements of the statutes. The answer must be sent or delivered to the court, whose address is 215 South Hamilton Street, Suite 1000, Madison, Wisconsin 53703, and to Colin Roth, Assistant Attorney General, plaintiff's attorney, whose address is Wisconsin Department of Justice, Post Office Box 7857, Madison, Wisconsin 53707-7857. You may have an attorney help or represent you.

If you do not provide a proper answer within twenty (20) days, the court may grant judgment against you for the award of money or other legal action requested in the complaint, and you may lose your right to object to anything that is or may be incorrect in the complaint. A judgment may be enforced as provided by law. A judgment awarding money may become a lien against any real estate you own now or in the future and may also be enforced by garnishment or seizure of property.

Dated this 23rd day of April 2026.

Respectfully submitted,

JOSHUA L. KAUL
Attorney General of Wisconsin

Electronically signed by:

Colin T. Roth
COLIN T. ROTH
Assistant Attorney General
State Bar #1103985

2

CHARLOTTE GIBSON
Assistant Attorney General
State Bar #1038845

Attorneys for Plaintiff

Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 266-7636 (Roth)
(608) 957-5218 (Gibson)
(608) 294-2907 (Fax)
colin.roth@wisdoj.gov
charlie.gibson@wisdoj.gov

3

Case 2026CV001286   Document 4   Filed 04-23-2026   Page 4 of 26

**FILED**
**04-23-2026**
**CIRCUIT COURT**
**DANE COUNTY, WI**
**2026CV001286**
**Honorable Ryan D.**
**Nilsestuen**
**Branch 10**

STATE OF WISCONSIN   CIRCUIT COURT   DANE COUNTY
BRANCH ____

STATE OF WISCONSIN,

      Plaintiff,

    v.

                             Case No. _____
                             Unclassified - Civil:  30703

FORIS DAX MARKETS, INC., NORTH
AMERICAN DERIVATIVES EXCHANGE, INC.
D/B/A CRYPTO.COM | DERIVATIVES NORTH
AMERICA, and DOES 1-20,

      Defendants.

## COMPLAINT TO ABATE PUBLIC NUISANCE

## INTRODUCTION

1.    Sports betting has long been illegal in Wisconsin, with exceptions only for certain Native American tribal gaming operations.

2.    Yet Crypto.com is facilitating illegal sports betting throughout the state.

3.    Through its so-called "prediction markets," Crypto.com profits from Wisconsin residents placing bets on the outcome of sporting events, just like how ordinary casino sportsbooks profit from the bets people make there. For instance, Wisconsinites could use Crypto.com's services to place bets on the recent NCAA college basketball tournament, including who would win the

Final Four matchup between the University of Michigan and the University of Arizona. And for every bet made, Crypto.com collects a fee akin to a casino's rake at a poker table.

4.    Crypto.com uses a fig leaf to disguise the casino-style sports betting it facilitates in Wisconsin. It relabels its sports bets as "event contracts," meaning contracts traded between buyers and sellers at agreed-upon prices that mimic the odds of a sports-related outcome. To return to the NCAA basketball tournament, as of April 3, 2026, traders could buy contracts taking the position that the University of Michigan would win its Final Four matchup with the University of Arizona for around $0.54, which reflected a roughly 54% projected chance of Michigan winning. When Michigan won, event contract holders who bet on that team winning received $1 per contract and those who instead bet on Arizona winning received nothing.

5.    That is indistinguishable from an ordinary sports bet, as defined by Wis. Stat. § 945.01(1). Parties to these "event contracts" wager money on whether a given sports-related outcome will occur, just as when people bet on that same outcome using traditional casino-style sportsbooks.

6.    Unlike ordinary sportsbooks, Crypto.com apparently does not take the other side of the sports bets its customers make. But that does not get it off the hook, since it still generates significant revenue from these sports bets by charging transaction fees each time event contracts are traded using its

2

platform. In short, Crypto.com makes money from the illegal betting it facilitates, just like the operator of an illicit poker game who takes a cut of each pot.

7.      By making money from illegal sports betting, Crypto.com is engaging in criminal gambling activity under Wis. Stat. § 945.03(1m).

8.      These ongoing, repeated criminal violations represent a public nuisance that should be abated immediately.

## PARTIES

9.      Plaintiff State of Wisconsin is a sovereign state of the United States of America, with its principal offices located in Madison, Wisconsin.

10.      Defendant Foris DAX Markets, Inc., is incorporated in Delaware corporation with its principal place of business in Texas. It is the parent company of the other Crypto.com entity named in this complaint (collectively, "Crypto.com"). Together with its affiliated entity, Crypto.com operates a prediction market platform through which it offers products referred to as event contracts for sale. Crypto.com's event contracts are made available to persons located in Wisconsin through its website and mobile app.

11.      Defendant North American Derivatives Exchange, Inc., d/b/a Crypto.com | Derivatives North America is incorporated in Delaware with its principal place of business in Illinois. North American Derivatives Exchange, Inc. is a wholly owned subsidiary of Foris DAX Markets, Inc. In concert with

the other Crypto.com entity, North American Derivatives Exchange, Inc. operates a prediction market platform through which it offers products referred to as event contracts for sale, including in Wisconsin.

12.    Defendant Does 1-20 are private individuals and/or entities who facilitate Crypto.com's unlawful sports betting activity in Wisconsin. The identities of Does 1-20 are not presently known to the State of Wisconsin. The private Doe defendants are collectively referred to with the Crypto.com entities as "Crypto.com." The State of Wisconsin expressly reserves the right to amend this Complaint to add the private Doe defendants by name, once their identities are known.

## JURISDICTION AND VENUE

13.    This action is brought pursuant to the Attorney General's authority under Wis. Stat. §§ 823.01 and 823.02 to enjoin and abate a public nuisance on behalf of the State of Wisconsin.

14.    This Court has jurisdiction over the subject matter of this dispute pursuant to article VII, section 8 of the Wisconsin Constitution and Wis. Stat. § 753.03, which provide for subject-matter jurisdiction over all civil matters within this State.

15.    This Court has personal jurisdiction over Crypto.com pursuant to Wis. Stat. § 801.05(1)(d), (3), and (4). Crypto.com has engaged in substantial business contacts within the State of Wisconsin by directing its event contract

4

trading activities to Wisconsin, among other states. Crypto.com's acts, conducted both within and outside the State of Wisconsin, are a cause of the in-state injuries alleged in this Complaint.

16. Venue is proper in Dane County because it is the county where the claims arose and is the county in which Crypto.com does substantial business. Wis. Stat. § 801.50(2)(a), (c).

## GENERAL ALLEGATIONS

### I. Wisconsin bans most sports betting today, as it has done for much of its history.

#### A. Wisconsin has banned most forms of gambling ever since the mid-1800s when it was a territory.

17. Wisconsin has a long tradition of banning most forms of gambling within its borders.

18. The original state constitution, enacted in 1848, provided that "[t]he legislature shall never authorize any lottery." Wis. Const. art. IV, § 24 (1848). Over time, this constitutional prohibition was understood to encompass not just lotteries, but all gambling-type activities. *See Panzer v. Doyle*, 2004 WI 52, ¶ 8, 271 Wis. 2d 295, 680 N.W.2d 666, *abrogated by Dairyland Greyhound Park, Inc. v. Doyle*, 2006 WI 107, 295 Wis. 2d 1, 719 N.W.2d 408.

19. In parallel with the constitutional ban (and even before statehood), Wisconsin statutes criminally prohibited specific forms of gambling.

5

20.    In 1838, the first Wisconsin territorial legislature provided criminal penalties for, among other things, setting up any gaming table or gambling device or betting money at any gaming table. *See id.* ¶ 7 n.3 (citing Ch. 65, Laws of the Wisconsin Territory, First Session (approved Jan. 18, 1838)). These prohibitions were carried over when Wisconsin became a state in 1849. *See id.* (citing chapter 138, "Of Offences Against Public Policy," Revised Statutes of the State of Wisconsin 705–07 (1849)).

21.    The Legislature specifically banned sports betting as early as 1898.

22.    People could not place sports bets: "Any person who shall lose or win any money . . . by betting upon any game, election, race, fight, sport, or pastime . . . shall be punished by fine." Wis. Stat. ch. 185, § 4535 (1898).

23.    Nor could people facilitate sports betting: "[It] shall be unlawful for any person, company or corporation to engage in . . . book-making, . . . or to record or register bets or wagers . . . upon the result of any trial or contest of skill, speed or power of endurance of man or beast, . . . and it shall also be unlawful for any person to become the custodian or depository for gain . . . of any money . . . staked . . . upon any such result . . . ." Wis. Stat. ch. 185, § 4539b (1898).

24.    Later, in 1929, the Legislature "declared" sports betting to be "gambling and to be unlawful and to constitute a public nuisance." Wis. Stat.

6

§ 348.085(1) (1929). That declaration covered schemes whereby "any person [was] . . . induced to believe that upon his paying to, or depositing with, any other person, any money, . . . he may as the result in whole or part of any contest of skill, speed or power of endurance of man or beast receive . . . any money." *Id.*

25.     Correspondingly, a place where sports betting occurred was "declared to be . . . common gambling house and to be a public nuisance," and it was "made the duty of the attorney-general to take proper action to abate the same." Wis. Stat. § 348.085(2) (1929).

26.     In 1955, the Legislature replaced the system of specific gambling bans in chapter 348 (including the sports betting ban) with a comprehensive, general gambling ban in chapter 945. *See generally* Wis. Stat. ch. 945 (1955–56).

27.     The same scheme exists today, except that in 1969 the Legislature added back to chapter 945 a specific reference to sports betting. *See* Wis. Stat. § 945.03(7) (1969–70) (prohibiting "us[ing] a wire communication facility for the transmission or receipt of information assisting in the placing of a bet . . . on any sporting event or contest"); Wis. Stat. § 945.03(1m)(g) (2025–26) (same).

28.     In parallel with the various statutory updates, the constitutional ban on the Legislature's authorizing "lotteries" has been updated over time. Today, article IV, section 24, states that "the [L]egislature may not authorize

7

gambling in any form," with a few narrow exceptions, most prominently for the state lottery.

29.     While Wisconsin has prohibited gambling since before statehood, it also has long recognized the legitimacy of certain kinds of futures contracts. In the 1955 statutory update to Wisconsin's gambling laws, the Legislature specifically excluded from the definition of an unlawful "bet" any "[b]ona fide business transactions which are valid under the law of contracts including without limitation contracts for the purchase or sale at a future date of securities or other commodities." Wis. Stat. § 945.01(a)1. (1955).

30.     But this exception for "bona fide business transactions" only goes so far. Long before enacting it, the Legislature provided that contracts related to sports bets are invalid. Since at least 1898, "[a]ll . . . agreements . . . where the whole or any part of the consideration . . . shall be for money . . . betted at or upon any game of any kind . . . or upon any race, fight, sport or pastime . . . shall be void." *See* Wis. Stat. ch. 185, § 4538 (1898). That same provision still exists today. *See* Wis. Stat. § 895.055 (2025–26).

31.     Turning from the Legislature, Wisconsin courts have long recognized that illegal gambling operations represent public nuisances. *See, e.g., State ex rel. Cowie v. La Crosse Theaters Co.*, 232 Wis. 153, 160–61, 286 N.W. 707 (1939) (holding that criminal violations of lottery prohibition were abatable public nuisances); *State ex rel. Regez v. Blumer*, 236 Wis. 129,

130, 294 N.W. 491 (1940) (same); *State ex rel. Trampe v. Multerer*, 234 Wis. 50, 53, 289 N.W. 600 (1940) (same, regarding bingo game); *Dallmann v. Kluchesky*, 229 Wis. 169, 176–77, 282 N.W. 9 (1938) (same, regarding gambling machines).

32.     And Wisconsin courts have long recognized the harms associated with gambling. Chief among them is that "[t]he more money which the player spends [gambling] the less he will have to devote to the needs and welfare of himself or family." *City of Milwaukee v. Milwaukee Amusement, Inc.*, 22 Wis. 2d 240, 249, 125 N.W.2d 625, 630 (1964); *see also Harnden v. Melby*, 90 Wis. 5, 62 N.W. 535, 536 (1895) (recognizing cause of action to recover "money illegally bet or wagered" to "secure a recovery of the money by the owner, or in his name, for the benefit of his family").

### B.     Wisconsin bans most forms of betting today, with limited exceptions for tribal gaming operations.

33.     Current Wisconsin law contains three relevant criminal prohibitions of "commercial gambling" in Wis. Stat. § 945.03(1m):

> Whoever intentionally does any of the following is engaged in commercial gambling and, except as provided in sub. (2m), is guilty of a Class I felony:
>
> …
>
> (b) For gain, receives, records or forwards a bet or offer to bet or, with intent to receive, record or forward a bet or offer to bet, possesses facilities to do so;
>
> …

9

(c) For gain, becomes a custodian of anything of value bet or offered to be bet;

…

(g) For gain, uses a wire communication facility for the transmission or receipt of information assisting in the placing of a bet or offer to bet on any sporting event or contest, or for the transmission of a wire communication which entitles the recipient to receive money or credit as a result of a bet or offer to bet.

34. A "bet" is defined as "a bargain in which the parties agree that, dependent upon chance even though accompanied by some skill, one stands to win or lose something of value specified in the agreement." Wis. Stat. § 945.01(1).

35. And a "wire communication facility" is defined as "any and all instrumentalities, personnel and services, and among other things the receipt, forwarding or delivery of communications used or useful in the transmission of writings, signs, pictures and sounds of all kinds by means of wire, cable, microwave or other like connection between the points of origin and reception of such transmission." Wis. Stat. § 945.01(6).

36. These general criminal prohibitions on "bets" cover sports betting. *See, e.g., State v. Vlahos*, 50 Wis. 2d 609, 612, 184 N.W.2d 817 (1971) (affirming commercial gambling conviction under chapter 945 where "bets" involved money wagered on the outcomes of football and baseball games).

37. Two prominent tribal-related exceptions to this general ban exist. First, Wisconsin's gaming compacts with certain Native American tribes allow

10

those tribes to operate sports betting on their tribal lands. Second, the Legislature recently passed Assembly Bill 601, which the Governor signed into law on April 9, 2026. This bill removed from the definition of an "bet" under Wis. Stat. § 945.01(3) certain electronic sports wagers when conducted using servers located on tribal lands and authorized by tribal compacts.

38.    Neither of these exceptions apply to non-tribal sports betting operations in Wisconsin, which remain illegal under chapter 945.

## II.    Crypto.com facilitates sports betting through its event contract trading platform.

### A.    Crypto.com makes money by operating a prediction market on which event contracts are traded.

39.    Prediction markets are financial platforms where users can trade event contracts that pay out money based on the outcome of real-world events, such as elections, sporting events, or macroeconomic releases.

40.    In short, traders buy and sell event contracts for a price X that pays off $1 if a specified outcome occurs and nothing otherwise.

41.    Crypto.com has further explained that events contracts "operate as a prediction market, where users can buy and sell positions based on whether they think specific events will occur or not," wherein "the pricing

11

mechanism reflects information discovery, as contract prices can gravitate toward the market's perceived probability of each outcome occurring."[1]

42.     Crypto.com provides a hypothetical that explains how the dynamic pricing of these event contracts work: "Question: 'Will the Lakers win the Championship?' Let's say it's December and this contract trades at $0.25, suggesting a 25% chance. You predict that their probabilities are better than 25% and buy 100 contracts for $25. If the Lakers win, your contracts pay $100, leaving a $75 profit (less fees). If they lose, you lose your $25 stake. Alternatively, if the contract price is $0.40, you could sell early for a $15 gain, locking in profit before the final outcome."[2]

43.     Crypto.com operates a prediction market of this kind, a platform that "presents [customers] with a straightforward Yes/No decision based on whether [they] believe an outcome of a global event, such as politics, economics, finances, will occur. If [a customers] believes the outcome will occur, [they] can select 'Yes' to trade contracts and open a position. Otherwise, [they] can choose 'No.'" Once the relevant event happens, customers "receive a . . . payment for

---

[1] Charles Archer, *Trading Event Contracts*, Crypto.com, https://crypto.com/us/prediction/learn/how-to-trade-event-contracts (last visited Apr. 21, 2026).

[2] Charles Archer, *Trading Event Contracts*, Crypto.com, https://crypto.com/us/prediction/learn/how-to-trade-event-contracts (last visited Apr. 21, 2026).

each contract [they] own if [they] are correct," but "[i]f [they] are incorrect, [they[ will lose the amount [they] paid to open the position."[3]

44.    Even today, Crypto.com's competitor, Kalshi, calls event contracts "bets" and "wagering." Kalshi explains that "[i]nvestors select markets that align with their interests or expertise and *place bets* using simple 'yes' or 'no' contracts." And Kalshi goes on to say, "*Each trader's bet* helps shape the market consensus, which is reflected in the contract prices." Similarly, Kalshi says that "[t]raders choose their favorite market, then select their side (yes or no), *the price they are willing to wager*, and the number of contracts they want to buy."[4]

45.    Although Crypto.com itself does not buy or sell event contracts, it explains that "[t]he following fees apply per Prediction contract based on contract value"[5]:

---

[3]    *Prediction    Trading,*    Crypto.com, https://help.crypto.com/en/articles/11373970-prediction-trading (last visited Apr. 21, 2026).

[4] Kalshi, *What is a Prediction Market?,* Kalshi News (Aug. 4, 2022), https://perma.cc/P7PN-FL28.

[5]    *Prediction    Trading,*    Crypto.com, https://help.crypto.com/en/articles/11373970-prediction-trading#h_1e63aacc58  (last visited Apr. 21, 2026) (the cited portion occurs at heading "Trading Fees").

# Trading Fees

The following fees apply per Prediction contract based on contract value:

| | $1 Contract Value | $10 Contract Value |
|---|---|---|
| Open a position | Exchange Fee: $0.02<br>Technology Fee: Not Applicable | Exchange Fee: $0.10<br>Technology Fee: $0.10 |
| Close a position (before expiry) | Exchange Fee: $0.02<br>Technology Fee: Not Applicable | Exchange Fee: $0.10<br>Technology Fee: $0.10 |
| Position settles in-the-money (correct prediction) | Exchange Fee: Waived<br>Technology Fee: Waived | Exchange Fee: $0.1<br>Technology Fee: Waived |
| Position settles out-of-the-money (incorrect prediction) | No Fees** | No Fees** |

46.     To fund trades on Crypto.com's prediction market, users deposit money into accounts controlled by Crypto.com.[6]

47.     And when customers buy and sell Crypto.com's event contracts, Crypto.com takes custody of the corresponding funds, until either one side sells their position in the contract (and thereby recovers the contract price at the time of sale minus Crypto.com's transaction fees) or the contract's triggering

---

[6]     Charles Archer, *Trading Event Contracts*, Crypto.com, https://crypto.com/us/prediction/learn/how-to-trade-event-contracts (last visited Apr. 21, 2026).

14

event occurs, at which point Crypto.com disburses funds to the winning party (again, minus Crypto.com's transaction fees).

### B. Crypto.com facilitates sports betting through the trading of sports-related event contracts on its prediction market.

48. Crypto.com offers contracts on game outcomes across football, baseball, basketball, golf, tennis, and more.[7]

49. One example of a sports-related event contract that Crypto.com has recently offered involves the 2026 NCAA men's college basketball tournament championship. As of April 3, 2026, Crypto.com showed the race for the top spot between the University of Michigan, the University of Arizona, the University of Illinois, and the University of Connecticut:



---

[7] *See Sports,* Crypto.com https://web.crypto.com/explore/predict/sports (last visited Apr. 21, 2026).

15

50.   When Michigan ultimately won, traders who bought contracts taking that position and held them until Michigan won received monetary payouts; traders who took other positions and held them received nothing.

51.   Crypto.com's event contracts mimic traditional forms of sports bets, all of which are available to customers in Wisconsin:

- Moneyline contracts, which ask which team will win a particular game. An example, as of April 3, 2026:



- Point spread event contracts, which ask whether a team will win (or lose) a game by a given number of points, and over/under contracts, which ask whether the teams competing in game will

16

score over or a under a specific number of points. As Cryto.com explains[8]:

## What markets are available?

The following markets are available for Sports Event Trading:

| Market | Trading | Payout |
|--------|---------|--------|
| Winner | Predict who will win the game. | If you correctly predict the winner, you get a payout. |
| Spread | Predict who will win the game after a point spread is applied. | If you correctly predict that the "favorite" wins by more points than the spread, you get a payout.<br><br>If you correctly predict that the "underdog" wins or loses by fewer points than the spread, you get a payout. |
| Totals | You predict whether the combined score of both teams will be above ("over") or below ("under") a set total number of points ("the line"). | If you correctly predict whether the total score is over or under the line, you get a payout. |

---

[8] *Sports Event Trading,* Crypto.com, https://help.crypto.com/en/articles/10208780-sports-event-trading (last visited Apr. 21, 2026).

17

52.     At one point, Crypto.com's competitor, Kalshi, advertised its sports-related event contracts as "bets." For instance, the following two images once appeared on Kalshi's official Instagram account:

 

53.     On multiple other occasions, Kalshi and its representatives (including its CEO) have described event contract offerings as "bets." *See* Dustin Goucher, *Ten Times Kalshi Said People Could Bet on Things*, Event Horizon (Apr. 3, 2024), perma.cc/DT9Y-6C7B. And, again, even today Kalshi describes its event contracts as involving "bets" and "wagers."

## CLAIM FOR RELIEF

## COUNT ONE: CRYPTO.COM IS ENGAGING IN AN ABATABLE PUBLIC NUISANCE BY FACILITATING SPORTS BETTING IN VIOLATION OF WIS. STAT. § 945.03(1m)

54.    The State incorporates by reference paragraphs 1–53 above as if fully stated herein.

55.    Pursuant to Wis. Stat. § 823.02, "[a]n action to enjoin a public nuisance may be commenced and prosecuted in the name of the state . . . by the attorney general."

56.    "[R]epeated violation[s] of . . . criminal statute[s] constitute[ ] per se a public nuisance," *State v. H. Samuels Co.*, 60 Wis. 2d 631, 636, 211 N.W.2d 417 (1973), particularly when they involve gambling activity. *See State ex rel. Cowie*, 232 Wis. 153; *State ex rel. Blumer*, 236 Wis. 129; *Dallmann*, 229 Wis. 169; *State ex rel. Multerer*, 234 Wis. 50.

57.    Wisconsin Stat. § 945.03(1m) provides that "[w]hoever intentionally does any of the following is engaged in commercial gambling and, except as provided in sub. (2m), is guilty of a Class I felony:":

(b) For gain, receives, records or forwards a bet or offer to bet . . . ;

…

(c) For gain, becomes a custodian of anything of value bet or offered to be bet;

…

19

(g) For gain, uses a wire communication facility for the transmission or receipt of information assisting in the placing of a bet or offer to bet on any sporting event or contest, or for the transmission of a wire communication which entitles the recipient to receive money or credit as a result of a bet or offer to bet.

58. Each sports-related event contract traded by Wisconsin residents using Crypto.com's services represents a "bet," as defined by Wis. Stat. § 945.01(1).

59. Ordinary wagers on sports contests qualify as "bets." *See, e.g.*, *Vlahos*, 50 Wis. 2d at 612.

60. Repackaging ordinary sports bets as "event contracts" does not remove them from the statutory definition of a "bet" under Wis. Stat. § 945.01(1). The parties to these contracts still agree to terms that are "dependent upon chance even though accompanied by some skill"—that is, the contracts depend on the outcome of various sports contests, the performance of players therein, and the like. Wis. Stat. § 945.01(1). And the parties to these contracts still "stand[ ] to win or lose something of value specified in the agreement"—that is, the party who takes the correct side of the event contract will receive money. *Id.*

61. Crypto.com violates Wis. Stat. § 945.03(1m)(b) by "for gain, receiv[ing], record[ing] or forward[ing] a bet": it operates an event contract trading market in Wisconsin through which sports bets are made, and it collects per-transaction fees on those bets.

20

62.     Crypto.com violates Wis. Stat. § 945.03(1m)(c) by "[f]or gain, becom[ing] a custodian of anything of value bet or offered to be bet": it receives the monetary consideration for sports-related event contract transactions occurring in Wisconsin and, upon either a pre-settlement sale of the contract or settlement of the contract, transmits any funds associated with the sale or settlement to the proper party, minus the company's per-transaction fees.

63.     Crypto.com violates Wis. Stat. § 945.03(1m)(g) by "[f]or gain, us[ing] a wire communication facility for the transmission or receipt of information assisting in the placing of a bet or offer to bet on any sporting event or contest, or for the transmission of a wire communication which entitles the recipient to receive money or credit as a result of a bet or offer to bet."

64.     Crypto.com operates "wire communication facilities": its online trading services represent "instrumentalities, personnel and services" that allow for the "receipt, forwarding or delivery of communications" between parties to event contracts (at least one of whom is located in Wisconsin) through the internet, that is, "by means of wire, cable, microwave or other like connection between the points of origin and reception of such transmission." Wis. Stat. § 945.01(6).

65.     And customers in Wisconsin use Crypto.com's "wire communication facilities" both to "transmi[t] [and] recei[ve]" sports-related event contracts, that is, "information assisting in the placing of a bet or offer

21

to bet on any sporting event or contest," and to "transmi[t] . . . wire communication[s] which entitle[ ] the recipient[s] to receive money or credit as a result of a bet or offer to bet," again through these companies' sports-related event contracts. Wis. Stat. § 945.03(1m)(g).

66.    Crypto.com uses its wire communication facilities in this way "for gain," Wis. Stat. § 945.03(1m)(g), again by charging transaction fees on each trade.

67.    Crypto.com's criminal violations of Wis. Stat. § 945.03(1m) are repeated and ongoing and so they "constitute[ ] per se a public nuisance." *H. Samuels Co.*, 60 Wis. 2d at 636.

## RELIEF REQUESTED

The State of Wisconsin respectfully requests the following relief:

a.    A declaration that, by making sports-related event contracts available for trading by customers located in Wisconsin, Crypto.com is violating Wis. Stat. § 945.03(1m)(b), (c), and (g) and thereby causing a public nuisance;

b.    A preliminary and permanent injunction enjoining and restraining Crypto.com, as well as its officers, employees, agents, successors, and anyone acting on its behalf, from making sports-related event contracts available for trading by customers located in Wisconsin;

22

c.      Any other relief that the court deems just and proper.[9]

Dated this 23rd day of April 2026.

Respectfully submitted,

JOSHUA L. KAUL
Attorney General of Wisconsin

Electronically signed by:

Colin T. Roth
COLIN T. ROTH
Assistant Attorney General
State Bar #1103985

CHARLOTTE GIBSON
Assistant Attorney General
State Bar #1038845

Attorneys for Plaintiff

Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 266-7636 (Roth)
(608) 957-5218 (Gibson)
(608) 294-2907 (Fax)
colin.roth@wisdoj.gov
charlie.gibson@wisdoj.gov

---

[9] The State of Wisconsin does not seek to void or otherwise invalidate outstanding sports-related event contracts where a customer located in Wisconsin is a party; the State seeks only the prospective relief described.